# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-985

\* \* \* \* \* \* \* \* \* \* \* \* \*

LAUREN MILLER,

    Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

    Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \*

Filed: June 1, 2026

Chief Special Master Corcoran

*Mark T. Sadaka,* Law Offices of Sadaka Associates, LLC, Englewood, NJ, for petitioner.

*Katherine C. Esposito,* U.S. Depart. of Justice, Washington, D.C., for respondent.

## DECISION GRANTING IN PART MOTION FOR FINAL ATTORNEY's FEES AND COSTS[1]

On July 10, 2019, Lauren Miller[2] filed a petitioner for compensation under the National Vaccine Injury Compensation Program. Petition ("Pet.") (ECF No. 1); Amended Pet. (ECF No. 20); 42 U.S.C. § 300aa-10, *et seq.* (the "Vaccine Act").[3] Petitioner alleged that she suffered vaccine-induced migraines, headaches, fatigue, and memory impairment due to receipt of influenza ("flu") and human papillomavirus ("HPV") vaccines on November 22, 2016. Pet. at Preamble, ¶ 4.

A dismissal decision was entered on September 23, 2025. Decision (ECF No. 56). Prior to the dismissal decision being issued, Petitioner had filed a motion for an interim award of fees

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The case caption was amended on July 5, 2024. Order Granting Motion to Amend Case Caption (ECF No. 39).

[3] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

on October 25, 2024, requesting $73,805.14. Petitioner Motion for Interim Fees ("Int. Fee App.") (ECF No. 42).  Respondent filed a response to Petitioner's interim fees motion, deferring to the my discretion regarding the reasonableness of the request, but asked for consideration of the hourly rate for experts paid by Respondent when assessing a reasonable hourly rate for Petitioner's expert. ("Resp.") Response at 5 (ECF No. 43).  An Order was issued on August 8, 2025, deferring ruling on Petitioner's Interim Fee's Motion.  Order (ECF No. 54).

After the dismissal decision was filed, Petitioner filed the instant motion for a final fees and costs award, and it incorporates the sums requested in the pending interim request. Pet. Final Fees Mot. ("Final Fee App.") (ECF No. 61).  Petitioner is requesting a total of $81,008.04 in fees and costs ($45,429.46 in fees and $35,583.58 in costs) for the work performed by her attorney and staff at the Law Offices of Sadaka Associates, LLC.

Respondent filed a brief reacting to Petitioner's motion for final fees and costs. Response to Motion for Final Attorney's Fees and Costs, dated Nov. 4, 2025 (ECF No. 62).  Respondent defers to my discretion and judgment in the amount of fees to be awarded.  *See* ECF No. 62 at 3-4.  Petitioner filed a reply to the response in support of her requested fees and costs application. Reply, dated Mar. 13, 2026 (ECF No. 63).

For the reasons set forth below, I hereby **GRANT** Petitioner's motion in part, awarding fees and costs in the total amount of $66,663.04[4]

## ANALYSIS

### I.    Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a fees award for successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1).  In prior decisions, I have set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award.  *See e.g. Sterling v. Sec'y of Health & Hum. Servs.,* No. 16-551V, 2020 WL 54943, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020).  Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation: fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing.  *Cottingham v. Sec'y of Health & Hum. Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)).  This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may

---

[4] This decision incorporates Petitioner's request for Interim Attorneys Fees filed on October 25, 2024.

bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioner's claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis.

The standard for finding the existence of reasonable basis is lesser (and thus, inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.,*144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276,287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.,* 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See e.g., Silva v. Sec'y of Health & Hum. Sevs.,* 108 Fed. Cl. 401,401-02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that there was sufficient objective basis to entitle her to a fees and costs award—albeit barely so. Petitioner received two covered vaccines; did experience some health issues after receipt; and was able to obtain colorable expert support for her theory. Thus, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because, I find no reason otherwise to deny a fees award, I will allow one herein. (However, I will take into account the overall the factually weak nature of the claim, and the vague nature of the expert opinion provided in this matter, in calculating certain costs to be awarded.)

## II.    Calculation of Fees

### A.    Hourly Rates

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

3

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner is requesting that her attorney, Mr. Mark Sadaka, and staff be reimbursed for work performed on her case from May 2017 through October 2025. Final Fee App. at 4; Int. Fee. App. Ex. A. Petitioner requests the following rates for Mr. Sadaka and his paralegals, based on the years work was performed:

| | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|
| **Mark Sadaka (Attorney)** | $376.38 | $396.00 | $405.00 | $422.00 | $444.00 | $458.00 | $482.00 | $532.00 | $562.00 |
| **Michele Curry (paralegal)** | $145.00 | $150.55 | $156.00 | $163.00 | $172.00 | $177.00 | $186.00 | $197.00 | $212.00 |
| **Ellen Terzini (paralegal)** | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $212.00 |

Mr. Sadaka practices in Englewood, NJ—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Jaffri v. Sec'y of Health & Hum. Servs.,* No. 13-484V, 2016 WL 7319407, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). The rates requested by Mr. Sadaka have been previously awarded by other special masters, and I find them to be reasonable. *See Barenblit ex rel A.S. v. Sec'y of Health & Hum. Servs.,* No. 18-180V, 2026 WL 1004982, at *1 (Fed. Cl. Spec. Mstr. Mar. 18, 2026).

I have also reviewed the submitted billing entries for this case and find the total number of hours billed to be reasonable. Therefore, no adjustments to the requested fees will be made.

### III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States,* 52 Fed. Cl. 667, 670 (2002); *Perreria v. Sec'y of Dep't of Health & Hum. Servs.,* 27 Fed. Cl. 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.,* No. 10-243V, 2013 WL 5367670, at

* 16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).  When petitioners fail to submit a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue.  *See e.g. Gardner-Cook v. Sec'y of Health & Hum. Servs.,* No. 99-480V, 2005 WL 6122520, at * 4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $35,583.58 in outstanding costs, including the filing fee, medical record retrieval costs, mailing costs, and costs associated with two experts: Omid Akbari, M.D. and David Younger, M.D.[5]  *See* Ex. 11 (ECF No. 29).  Documentation was provided for the Court's filing fee, medical record requests, copying expenses, and mailing expenses, thus, I grant these costs (which are modest) in full.  I will discuss the remaining expenses below.

### A.    Expert Costs for Dr. Omid Akbari

Dr. Akbari prepared one expert report in this matter and is requesting $31,950.00 (claiming 49 hours of work at an hourly rate of $550.00 and $500.00 per hour for 10 hours of review for a retainer).  Int. Fee. App. at Ex. B, 9-10.  Dr. Akbari has consistently been awarded an hourly rate of $500.00 per hour for his work in the Vaccine Program, however. *See Baker v. Sec'y of Health & Hum. Servs.,* No. 21-1869V, 2025 WL 1513417, at *4-5 (listing cases awarding Dr. Akbari an hourly rate of $550.00); *Bristow v. Sec'y of Health & Hum. Servs.,* No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (same); *see also Carroll ex. rel. J.W. v. Sec'y of Health & Hum. Servs.,* No. 19-1125V, 2023 WL 2771034, at *6 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); *Moenig ex rel. M.M. v. Sec'y of Health & Hum. Servs.,* No. 21-993V, 2026 WL 1229784, at *6-7 (Fed. Cl. Spec. Mstr. Mar. 23, 2026).  Further, it appears that Dr. Akbari used two different rates in this matter, first charging $500.00 an hour for his retainer and a 10-hour record review, then $550.00 in his billing statement. *See* Int. Fee App., Ex B at 7, 9. **Accordingly, Dr. Akbari's rate for his work drafting an expert report will be reduced to $500.00, consistent with the hourly rate provided in his retainer invoice.**

Additionally, a reduction in hours spent on this matter by Dr. Akbari is necessary. Dr. Akbari billed for a total of 59 hours on this case, some of which includes time downloading and highlighting references, preparing billing statements, and reviewing medical literature, among other things. *See* Int. Fee App., Ex B at 9-10.

Fees for experts are subject to the same reasonableness standard as fees for attorneys. *See Rochester v. United States,* 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature…should be considered as normal overhead office costs included within the attorneys' fee rates"); *Baker v. Sec'y of Health & Hum. Servs.,* No. 99-653V, 2005 WL 589431, at * 1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).  Here, Dr. Akbari bills for several entries that are administrative tasks that are not compensable in the Vaccine Program. For example, Dr. Akbari billed five hours for highlighting 61 medical articles for the Court and 1.1 hours for preparation of

---

[5] Petitioner never filed an expert report from Dr. David Younger.

billing statement. Int. Fee App., Ex. B at 10. Such entries are considered administrative and are therefore not compensable.  Dr. Akbari has also been warned against billing for such tasks by other special masters.  *See Moenig,* 2026 WL 1229784, at *6; *Williams v. Sec'y of Health & Hum. Servs.,* No. 19-1269V, 2024 WL 1253768, at *4 (Fed. Cl. Spec. Mstr. Feb. 28, 2024).

Further, an expert may be compensated only for the number of hours reasonably expended by the expert.  *King v. Sec'y of Health & Hum. Servs.,* No. 03-584V, 2010 WL 5470787, at * 4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable.'"); *Hines,* 22 Cl. Ct. at 754 ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.' ") (quoting *Griffin & Dickson v. United States,* 21 Cl. Ct. 1, 11 (1990)).  Other special masters have reduced Dr. Akbari's hours for excessive time spent reviewing medical literature.  *See Cogan v. Sec'y of Health & Hum. Servs.,* No. 21-184V, 2025 WL 2505545, at *6 (Fed. Cl. Spec. Mstr. July 24, 2025) (reducing Dr. Akbari's billed hours by 20% for administrative tasks and excessive billing to review medical literature); *Reinhardt v. Sec'y of Health & Hum. Servs.,* No. 17-1257V, 2021 WL 2373818, at *5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (comparing the total numbers of hours spent by other program experts to Dr. Akbari's hours billed for reviewing medical records).

Dr. Akbari billed a total of 23.4 hours on reviewing medical literature.  Int. Fee App., Ex. B at 10.  Additionally, the special master to which this case had been assigned, and who had reviewed Dr. Akbari's report, noted that the report provided a general overview of immunology and referred to injuries not alleged by Petitioner. Rule 5 Order, June 5, 2024 (ECF No. 36). I am generally reluctant to deny compensation to experts who have attempted to assist a petitioner with her claim, no matter my assessment of the expert's overall quality. But I have previously reduced costs for experts who excessively charged for their work or whose efforts were unhelpful. *See, e.g., Monte v. Sec'y of Health & Hum. Servs.,* No. 21-1960V, 2024 WL 1640006, at *4 (Fed. Cl. Mar. 21, 2024); *Martin v. Sec'y of Health & Hum. Servs.,* No. 15-789V, 2020 WL 8674683, at *4 (Fed. Cl. Dec. 8, 2020).

In making reductions, a line-by-line evaluation is not required.  *Broeklschen,* 102 Fed. Cl. at 729; *see also Wasson v Sec'y of Health & Hum. Servs.,* 24 Cl. Ct. 482, 484 (1991).  Rather, special masters may "render a decision based on general guidelines as to a reasonable fee" in the context of the Vaccine Program and in the context of a particular case.  *Wasson,* 24 Cl. Ct. at 484. Special masters are permitted to use their discretion to take an across-the-board reduction in appropriate circumstances.  *See Humphries v. Sec'y of Health & Hum. Servs.,* No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (reducing Dr. Akbari's hours by 20% for excessive billing).  Accordingly, I will reduce Dr. Akbari's requested time by 40%, for a total reduction of 19.6 hours.

**Therefore, Dr. Akbari's costs are reduced by $14,250.00, and his services are awarded the amount of $17,700.00.**[6]

### B.    Expert Costs for Dr. David Younger

Dr. David Younger was consulted on this matter, but Petitioner did not submit an expert report from him.  *See* Int. Fee App., Ex. B at 6.  Dr. Younger billed $3,000.00 for his review of this matter at an hourly rate of $500.00 for six hours.  *Id.* While Dr. Younger did not provide a detailed invoice, the hourly rate and hours expended appear reasonable, as he did not excessively charge for his work. I have previously reduced expert fees for failure to provide detailed hourly billing records, but also reluctant to deny compensation to experts for their efforts.  *See e.g. J.S. v. Sec'y of Health & Hum. Servs.,* No. 16-1083V, 2025 WL 2463263l, at *6 (Fed. Cl. Spec. Mstr. July 30, 2025) ("Experts who fail to produce invoices detailing their hourly rates and time spent on a matter should not expect to continue to receive a full award.").  Accordingly, no reductions will be made to Dr. Younger's fee request.

Both experts (and counsel who retain them) are warned in the future to take care that the time they devote to a matter is reasonably consistent with the value and quality of the report that is produced in the end.

### C.    Administrative Fee

Petitioner's counsel requested reimbursement for an "administrative fee," of $100.00.  This is a non-compensable overhead expense.  Petitioner's counsel also avers that his "billing rates are also expected to include administrative tasks."  *See* Final Fee App. at 5.  As I have denied such fee before, I will deny reimbursement for this fee again.  *See Thomas v. Sec'y of Health & Hum. Servs.,* No. 21-1780, ----WL--- (Fed. Cl. Spec. Mstr. May 6, 2026).  **Petitioner's costs will be reduced by $100.00.**

### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$66,663.04 (reflecting $45,429.46 in attorney's fees and $21,233.58 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the

---

[6] Reduction in Dr. Akbari's fee was calculated by: multiplying the hourly rate of $500.00 by the number of hours determined to be reasonably expended (59 x 40%=23.6; 59-23.6=35.4) ($500 x 35.4=$17,700).

Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

      **IT IS SO ORDERED.**

**/s/ Brian H. Corcoran**
**Brian H. Corcoran**
**Chief Special Master**

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

8